JOHN P. LANDA, District Attorney Kenosha County
Your predecessor asked me whether a town is required by statute to advertise for proposals and to accept bids for town contracts involving public work of a nonconstruction nature, specifically contracts of purchase of material items for town use, such as special police vehicles and the like in excess of $2500.00. For the reasons given below, it is my opinion that, pursuant to sec. 60.29(1 m), Stats., and sec. 66.29, Stats., a town has an obligation to advertise for proposals and to accept competitive bids only for those contracts which fall within the definition of "public contract" in sec. 66.29(1)(c), Stats.
COMPETITIVE BIDDING
It is undisputed that a primary purpose of statutes, charters, and ordinances requiring competitive bidding in the letting of municipal contracts is to protect taxpayers and property holders from *Page 285 
"favoritism, improvidence, extravagance, fraud and corruption, and to secure the best work or supplies at the lowest price practicable." 10 McQuillin, Municipal Corporations, sec. 29.29. However, it is equally lear that absent any such legal restrictions or given a contract which falls outside such legal restrictions as have been enacted, a municipality is free to let its contracts without notice and competitive bidding constraints. This was made clear by the Wisconsin Supreme Court in Cullen v.Rock County, 244 Wis. 237, 12 N.W.2d 38 (1943). The court's subsequent holding in Menzl v. Milwaukee, 32 Wis.2d 266, 271,145 N.W.2d 198 (1966), reaffirming the proposition, is representative of a long and consistent line of Wisconsin cases:
 "If the contract in question is not subject to the provisions of the bid section, the city is not bound by that type of procedure and . . . may contract on the basis of reasonable business judgment with one who is not the low bidder. Cullen v. Rock County, 244 Wis. 237, 240, 12 N.W.2d 38 (1943)."
See also 10 McQuillin, Municipal Corporations, sec. 29.31;Consolidated School Dist. v. Frey, 11 Wis.2d 434, 105 N.W.2d 841
(1960); Pembar, Inc. v. Knapp, 14 Wis.2d 527 (1961); Akin v.Kewaskum Community Schools, 64 Wis.2d 154 (1973).
Thus towns are required to use competitive bidding procedures only if, or to the extent that, the language of the statutes indicates a legislative intent to impose such a duty upon towns.[1]
Section 60.29(1m), as amended by ch. 188, Laws of 1975, provides that a town board is empowered and required:
 "To let pursuant to s. 66.29 all public contracts, as defined in s. 66.29 (1) (c), the estimated cost amount involved of which shall exceed $2,500, except that the town board may determine that any class of public work or any part thereof shall be done directly by the town without submitting the same for bids. The *Page 286 
town board may also enter into arrangements with its county to do any type of work without the requirement of competitive bidding regardless of the amount involved. County highway departments are authorized to enter into such agreements on a cost basis."
Since, as sec. 60.29(1m) indicates, the provisions of sec. 66.29 shall apply only if the contract in question complies with the definition of sec. 66.29(1)(c), which provides:
 "The term `public contract' shall mean and include any contract for the construction, execution, repair, remodeling, improvement of any public work, building, furnishing of supplies, material of any kind whatsoever, proposals for which are required to be advertised for by law." (Emphasis added.)
Statutes are not, however, automatically considered ambiguous.
 "The first general maxim of interpretation is, when the words of an act are clear and precise terms — when its meaning is evident and leads to no absurd conclusions, there can be no reason for refusing to admit the meaning the words naturally present, and go elsewhere in search of conjecture in order to restrict or extend the act." Brightman v. Kirner, 22 Wis. 54 (1867).
The language of sec. 60.29(1m) is clear and precise: the only town contracts required to be let in conformance with the competitive bidding procedures of sec. 66.29 are "public contracts, as defined in sec. 66.29(1)(c)." In like manner, the definition of "public contracts" in sec. 66.29(1)(c), specifically incorporated into 60.29(1m), is also clear and precise: it encompasses only those contracts involving certain kinds of work on purchases "proposals for which are required tobe advertised for by law."
Based on the plain meaning of the language of both statutes, therefore, it would seem that towns are not subject to any competitive bidding restraints at all, absent some separate legal requirement that bidding proposals be advertised.
While I sympathize with those who would argue that sec. 60.29(1 m) may not, in fact, reflect a proper balancing of the interests involved, the fact that a statute "has outworn its usefulness or is no longer compatible with the realities of life" is a matter for the *Page 287 
Legislature not for the Executive or the Judiciary. Rupp v.Traveler's Indemnity Co., 17 Wis.2d 16, 23, 115 N.W.2d 612
(1962).
Therefore, it is my opinion that, pursuant to the plain meaning of sec. 60.29(1m) and sec. 66.29(1)(c), competitive bidding is not required for any town contracts unless there exists a separate legal requirement that bidding proposals be advertised for. Present Wisconsin statutes contain no such independent requirement. However, the wording of town charters and local ordinances would trigger the requirement for bidding should they require advertisement. If charters or local ordinances contain no provision requiring that proposals for contracts be advertised for, a town is free to make any sort of contract it deems provident, following the rule laid down by the court in Cullen,supra.
Section 60.29(1m) directs that the competitive bidding procedures in sec. 66.29 be followed when a town is engaged in making "public contracts" as defined in sec. 66.29(1) (c) . Obviously, there is no advertising requirement for contracts which are not public contracts. Is there an advertising requirement for "public contracts"'? The language of these sections is unfortunately inconsistent. Section 66.29(1)(c) provides the only arguable basis for imposing a bidding requirement. That section defines "public contracts" as contracts ". . . proposals for which are required to be advertised for by law." Thus, it could be argued that use of the term "public contract" in sec. 60.29(1m) implies an advertising requirement. Since sec. 60.29(1 m) requires letting all "public contracts" over $2,500 by the competitive bidding process the argument would by that sec. 60.29(1m) necessarily requires advertising.
Were I not constrained by court decision I would accept this argument because I firmly believe that this is what the Legislature probably intended and that imposing an advertising requirement is sound public policy. However, the court in Cullenv. Rock County stated its view of the definition contained in sec. 66.29(1)(c) as follows:
 "It will be noticed that the test of a public contract is whether proposals are required to be advertised for by law implying, of course, that in some instances there is no requirement." Cullen, supra, p. 241. *Page 288 
Cullen is still good law. Menzl v. Milwaukee, 32 Wis.2d 266
(1966), Akin v. Kewaskum Community Schools, et al.t, 64 Wis.2d 154
(1974). The language quoted above can only be interpreted to mean that an express advertising requirement must be found outside of the definition in sec. 66.29(1)(c) if it is to be found at all. No such express advertising requirement exists in sec. 60.29(1m) or sec. 66.29, Stats. Consequently, I am or the opinion that there is no requirement for towns to advertise for "public contracts" over $2,500.
PUBLIC CONTRACTS-SPECIFIC PURCHASES
Not all contracts entered into between a town and private parties are "public contracts" as defined in sec. 66.29(1)(c). Only those involving the enumerated kinds of public work are included, i.e., contracts "for the construction, execution, repair, remodeling, improvement of any public work, building, furnishing of supplies, material of any kind whatsoever." Your specific concern involves contracts for purchase of items such as police cars which do not involve construction. The part of the definition of public contract in sec. 66.29(1)(c), which provides for nonconstruction items refers to contracts for "the furnishing of supplies [and] materials of any kind whatsoever."
35 Op. Att'y Gen. 88 (1946) attempted to define "supplies and materials." It was determined that a contract to buy an FM radio to be used in aiding the highway committee in snow removal work could not be classified as a contract for the furnishing of supplies or material. The opinion reasoned:
 ". . . Words of a statute are required to be construed according to the common and approved usage of the language. Sec. 370.01 (1); Wisconsin B. I. Co. v. Ind. Comm., (1940) 233 Wis. 467 at 478. The word `supplies' is ordinarily considered to mean something that is used or consumed or which is capable of such use. See United States Rubber Co. v. Washington E. Co., (1915) 86 Wash. 180, 149 P. 706, L.R.A. 1915 F 951. The word `materials' is usually understood to mean something that enters into or forms part of a finished structure or which is capable of such use. United States Rubber Co. v. Washington E. Co., supra. See also Southern Surety Co. v. Metropolitan S. Comm., (1925) 187 Wis. 206
at 216. There are, of course, numerous cases involving the question of whether a particular *Page 289 
commodity or article is included within the words `supplies' or `materials' or both. So far as we can determine none has gone so far as to hold that an FM radio or anything comparable to it is included within either. Such authority as there is, most nearly in point, supports the view that an FM radio would not ordinarily be considered as falling within the designation `supplies' or `materials.' Peter's Garage, Inc. v. City of Burlington, (1939) 121 N. J. L. 523, 3 A. (2d) 634 . . . affirmed 123 N. J. L. 227, 8 A. (2d) 910. . . ."
The court in Peter's Garage, Inc. held that a contract to purchase a dump truck does not fall within a statute requiring a city to award contracts for furnishing of "materials, supplies or labor" to the lowest bidder. A dump truck is an "apparatus." not "materials" or "supplies." The court also cited cases where contracts for the purchase of a combination pumper, chemical and hose wagon, a fire truck and miscellaneous fire equipment, a chemical engine, a truck chassis, an oil burner and voting machines were held not within the purview of the statute.
The reasoning in 35 Op. Att'y Gen. 88 (1946) was reiterated in 47 Op. Att'y Gen. 69 (1958) where it was determined that a contract to purchase farm machinery by a county for use in limited farming operations conducted at the county hospital was also not subject to the competitive bidding requirements of sec. 66.29. The farming machinery was considered "equipment. not "supplies" or "material." In 66 OAG 198 (1977) (July 1, 1977) I decided that a diesel engine was not "supplies" or "materials" but constituted equipment and therefore outside the competitive bidding requirements.
Based on these cases and opinions it is my opinion that a police car is an apparatus or equipment, not "supplies" or "material." Therefore, a contract for the purchase of a police car need not comply with the provisions of sec. 60.29(1m), Stats. With respect to any other items for which your town may contract to purchase, an individual determination must be made whether such items are comprehended within the terms "supplies" or "material."
In closing, I would point out as I did in 66 OAG 198 (1977), that the narrow statutory distinctions discussed in this opinion are only a few of the many inconsistencies which contribute to the current unfortunate lack of uniformity in our local bidding laws. I again *Page 290 
invite the Legislature to seriously consider a major overhaul of our laws relating to local bidding.
BCL:WHW
[1] Whether any independent legal restrictions have been placed on town contracts in Pleasant Prairie township either by town charter or by local ordinance is outside the scope of this opinion.